**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON**

**CIVIL ACTION NO. 04-224-DLB**

**GREGORY STEENKEN**                                                           **PLAINTIFF**

**vs.**                    **<u>MEMORANDUM OPINION & ORDER</u>**

**CAMPBELL COUNTY, ET AL**                                    **DEFENDANTS**

***\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\****

**I.    Introduction**

Plaintiff commenced this federal question case against Defendants alleging that they unlawfully discriminated against him based upon his military status, in violation of the Uniformed Services Employment and Reemployment Rights Act (USERRA), 38 U.S.C. § 4301 *et seq*. Plaintiff also advances a 42 U.S.C. § 1983 claim based on an alleged violation of his Fourteenth Amendment Procedural Due Process rights, as well supplemental state law claims of constructive discharge, intentional infliction of emotional distress, and negligent supervision. Defendants include the Campbell County, the Campbell County Fiscal Court, Judge Executive Steve Pendery, County Commissioners Bill Verst, Dave Otto, and Ken Rechtin, County Police Chief David Sandfoss, and Police Lieutenant Todd Straman.[1] Each defendant is sued in both his official and individual capacity.

---

[1] Defendant Verst is deceased.

1

The case is presently before the Court upon Defendants' Motion for Summary Judgment (Doc. # 31). Plaintiff having filed his response (Doc. # 33), and the time for filing a reply having long expired, the motion is therefore ripe for review.

### II. Factual and Procedural Background

Plaintiff Gregory Steenken began working as a patrolman for the Campbell County Police Department (CCPD) in August 2000. At that time, Plaintiff was also a reservist in the United States Marine Corps. Plaintiff claims that "[f]rom the very start of his employment, [his] supervisors criticized [him] for his military service...." More specifically, Plaintiff testified that: 1) when he arrived for his first day of duty with his uniform pressed and boots polished, Defendant Lieutenant Todd Straman told him "this isn't the military," 2) during pistol qualification, Straman gave him a smaller target and stated, "I know you were in the Marines ... this isn't no machine gun," and "let's see how good a shot Marines really are," 3) prior to his deployment, Chief Sandfoss gave a statement to the press, intimating that Plaintiff's service was going to create staffing problems for CCPD, and Lieutenant Straman told him "not to get killed" because then there would be no one to protect the citizens of Campbell County, and 4) fellow employees tried to get him recruited, and disseminated his personal information. Plaintiff also claims that during his first year, he was ridiculed for the number of arrests he made, and Lieutenant Straman cursed at him in front of witnesses, including a fellow officer and an inmate.

In October, 2001, Plaintiff was called into active duty as part of Operation Enduring Freedom. His tour of duty lasted approximately six months, after which he was honorably discharged. Plaintiff alleges that the criticism about his military service and high rate of arrests, especially driving under the influence (DUI) arrests, intensified upon his return in

2

June 2002. He also claims that, shortly after he returned to CCPD, he was informed by a fellow police officer from a neighboring jurisdiction that Lieutenant Straman was "tailing [him] during duty in an effort to find a reason to discipline [him]." Later that year, when Plaintiff received an award for DUI enforcement, he claims that his superiors told him to "do some real police work" and "leave the residents of Campbell County alone."

As further evidence of what he claims was a "continuous pattern of harassment," Plaintiff alleges that: 1) he was approached by Campbell County residents and told that he was going to be fired; 2) he was singled out for discipline when other officers, who engaged in similar conduct, were not; 3) he was assigned unsafe and substandard vehicles, and Chief Sandfoss ordered his radar equipment be removed so he would spend less time working traffic and more time being a "complete police officer"; 4) Chief Sandfoss retained an unsubstantiated citizen complaint to use against him at a later date; 5) awards and letters of commendation were deliberately omitted from his personnel file; and 6) in October 2003, a poster bearing his picture and the following language was posted on the department's bulletin board: "WANTED: Officer Greg Steenken aka Connie Cornflakes, last seen in Campbell County area. If located contact Tony the Tiger. Be advised use caution due to huge ego." According to Plaintiff, his working environment became so intolerable that he was forced to resign on October 29, 2003.[2]

Defendants, on the other hand, contend that Plaintiff was never treated unfairly or terminated as a result of military duty; in fact, it is uncontested that Plaintiff was promptly re-employed upon his return from military service. Defendants also argue that Plaintiff was

---

[2] If Plaintiff did not resign, Chief Sandfoss was prepared to terminate him. (Doc. # 31, Exh. 10).

disciplined not on account of his military status or service, but rather because he continually violated department rules and regulations. In support, they point to several incidents which are part of Plaintiff's personnel file, including: 1) on August 29, 2000, while he was attending basic training at Eastern Kentucky University, Plaintiff was reprimanded for insubordination; 2) in December 2002, Plaintiff was disciplined for carelessly operating his vehicle while conducting a traffic stop; he exited the vehicle without placing it in "park." Plaintiff was also disciplined for failing to report damage to his vehicle, and was ordered to serve a one-day suspension for each violation; 3) he was involved in a high-speed rundown of a DUI suspect on December 25, 2002; 4) on May 22, 2003, he was disciplined for failing to appear in court, operating his vehicle in an unsafe manner (traveling at a high rate of speed) and while it was in "mechanical distress," and failing to properly submit evidence for testing/analysis. Plaintiff was suspended without pay for six working days; 5) on September 8, 2003, a citizen filed a complaint with CCPD alleging that Plaintiff cursed at her, pointed his weapon at her, and yelled at her; and finally, 6) he was placed on administrative leave after he was involved in a motor vehicle accident while on duty on October 15, 2003.[3]

Plaintiff alleges that, as a result of these incidents, his professional reputation has been tainted, and he has been unable to secure other employment as a police officer. Plaintiff also alleges that he has sustained over $1 million in lost wages. Plaintiff argues

---

[3] According to Defendants, Plaintiff was driving east on Kentucky Highway 1998 when his attention was diverted and he ran off the road and into a ditch. Two passers-by stopped to help, and once the vehicle was removed from the ditch, Plaintiff left the scene, and notified his supervisor only after he was unable to restore the vehicle to working status. Plaintiff did not appeal or administratively challenge any of these disciplinary actions because he believed the process was tainted.

that the County, Fiscal Court, Judge Executive and County Commissioners are liable because they were, or should have been, aware of the harassment and discrimination and did nothing to prevent or stop it. In particular, Plaintiff claims that all the disciplinary actions he received should have raised a "red flag," as should his resignation letter, which detailed the facts outlined above.

### III. Analysis

#### A. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *See id.* at 324. A dispute over a material fact cannot be "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). If a reasonable jury could not return a verdict for the nonmoving party on the basis of the evidence as construed in its favor, summary judgment should be granted to the movant. *See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).

**B.     Federal Claims**

   **1.     Uniformed Services Employment and Reemployment Rights Act Claim**

In Count One of his Complaint, Plaintiff alleges the Defendants violated the Uniformed Services Employment and Reemployment Rights Act ("USERRA") by their conduct in this case. Enacted in 1994, USERRA prohibits employers from discriminating against individuals who serve in the armed services. USERRA mandates that employees "shall not be denied initial employment, reemployment, retention in employment, promotion, or any *benefit of employment* by an employer" on the basis of their affiliation with the uniformed services. 38 U.S.C. § 4311(a) (emphasis added). Employees must demonstrate that an employer used his or her military affiliation as a "motivating factor" in any adverse employment action taken against that employee. *Id.* § 4311(a), (c)(1). However, an employer has an affirmative defense if it can prove that it would have taken the same action notwithstanding the employee's military affiliation. *Id.* § 4311(c)(1).

Although USERRA "does not specifically prohibit an employer from subjecting an employee to harassment or a hostile work environment due to the employee's military status" *Vickers v. City of Memphis*, 368 F. Supp. 2d 842, 844 (W.D. Tenn. 2005), the Act specifically prohibits the denial of "any benefit of employment by an employer" to members of uniformed service based upon their membership and/or performance of service. 38 U.S.C. § 4311(a). Because the right to be free from a hostile work environment, broadly construed, is a benefit of employment, the Court, in the absence of Sixth Circuit authority to the contrary, concludes that Plaintiff's hostile work environment claim is cognizable under USERRA. *See e.g., Petersen v. Dep't of Interior*, 71 M.S.P.R. 227 (1996) (holding that

6

harassment on account of prior military service, which is sufficiently pervasive to alter the conditions of employment and create an abusive working environment, is a violation of 38 U.S.C. § 4311(a); *Vickers*, 368 F. Supp. 2d at 844-45 (resolving the issue of whether a cause of action for harassment or hostile work environment exists under USERRA in the affirmative).

"The Congressional Record and the courts which have interpreted USERRA indicate that the burden-shifting framework approved by the Supreme Court in *NLRB v. Transportation Management Corp.*, 462 U.S. 393, 401 (1983), is used to determine whether an employer discharged a reservist in violation of USERRA." *Brandsasse v. City of Suffolk, Va.*, 72 F.Supp.2d 608, 617 (D. Va. 1999). Under this legal framework, a claimant must first establish a prima facie case of discrimination by showing by a preponderance of the evidence that his protected status was a motivating factor in the adverse employment action. *Martin v. AutoZone, Inc.*, 411 F.Supp.2d 872, 881 (S.D. Ohio 2005).[4]

To establish a certain factor as a motivating factor, a claimant need not show that it was the sole cause of the employment action, but rather that it is one of the factors that "a truthful employer would list if asked for the reasons for its decision." *Kelley v. Maine Eye Care Associates*, 37 F.Supp.2d 47, 54 (D. Maine 1999); *Robinson v. Morris Moore*, 974 F.Supp. 571, 575 (E.D. Tx. 1997). Indeed, "military status is a motivating factor if the defendant relied on, took into account, considered, or conditioned its decision on that consideration." *Robinson*, 974 F.Supp. at 576 (citing *Price Waterhouse v. Hopkins*, 490

---

[4] Although Plaintiff was not formally discharged in this case, the Sixth Circuit has held that a plaintiff may establish an adverse employment action by demonstrating that he was constructively discharged. *See Logan v. Denny's, Inc.*, 259 F.3d 558, 568 (6th Cir. 2001).

7

U.S. 228, 250 (1989)). Because direct evidence rarely exists, discriminatory motivation may be reasonably inferred from a variety of factors, including: 1) proximity in time between the employee's military activity and the adverse employment action, 2) inconsistencies between the proffered reason and other actions of the employer, 3) an employer's expressed hostility towards members protected by the statute together with knowledge of the employee's military activity, and 4) disparate treatment of certain employees compared to other employees with similar work records or offenses. *Mills v. Earthgrains Baking Co.*, No. 3:03-CV-182, 2004 WL 1749500, at *4 (E.D. Tenn. July 19, 2004).

Plaintiff attempts to establish discriminatory motivation under factors (3) and (4). First, he claims that Chief Sandfoss "plainly admitted that he felt that any military commitment [of] officers under his command interfered with the administration of the CCPD," (Doc. #33, p.7). Plaintiff also alleges disparate treatment, claiming that "he was treated differently than other officers who were not in the military." (Doc. #33, p.9). He claims that a fellow officer who was involved in a minor traffic accident and only received a letter of reprimand; and another officer, who was involved in an off-duty shooting that was deemed accidental, was not disciplined. Chief Sandfoss also testified that, during his tenure, no other officer was disciplined as often as Plaintiff. (Sandfoss depo, at 81). Based upon the factors outlined in *Mills*, Plaintiff has presented sufficient evidence of discriminatory motivation to withstand summary judgment.

However, that does not end the Court's inquiry. Once the Court makes the initial determination of whether there is sufficient evidence from which a rational jury could infer that Plaintiff's military status or service was a substantial or motivating factor in Defendants' action, the Court must next determine whether it could be said as a matter of law that

8

Defendants would have taken the same action regardless of Plaintiff's status. *Mills*, 2004 WL 1749500 at *4. Defendants bear this burden by a preponderance of the evidence. *Id*.

Defendants claim that "[i]f CCPD had any basis to terminate any police officer for violation of rules and regulations, it was [Plaintiff]!" (Doc. #31, p.18). As noted above, however, Plaintiff contends that he was singled out for alleged violations based upon his military status/service. Under these circumstances, and considering the evidence in the light most favorable to Plaintiff, the Court concludes that Defendants have not sustained their burden of proving that their conduct would have been same notwithstanding Plaintiff's reservist status. In summation, the Court holds that while Plaintiff may not prevail at trial, Plaintiff's factual theories are not wholly implausible and that a rational trier of fact might resolve the issues raised by Defendants' motion in favor of Plaintiff. As such, Plaintiff's USERRA claim will proceed to trial and Defendants' motion for summary judgment on Count One of Plaintiff's complaint is **denied**.

### 2. Section 1983 Claim for Alleged Violation of Plaintiff's Fourteenth Amendment Procedural Due Process Rights

In Count Two of his Complaint, Plaintiff advances a 42 U.S.C. § 1983 claim based on an alleged violation of his Fourteenth Amendment Procedural Due Process. Courts are authorized under § 1983 to "redress violations of 'rights, privileges, or immunities secured by the Constitution and [federal] laws' that occur under color of state law." *Huron Valley Hosp., Inc. v. City of Pontiac*, 887 F.2d 710, 714 (6th Cir. 1989) (quoting 42 U.S.C. § 1983). This provision "creates no substantive rights, but merely provides remedies for deprivations of rights established elsewhere." *Flint v. Kentucky Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).

9

In this case, Plaintiff assert that Defendants, acting under color of state law, violated his constitutional right to due process as guaranteed by the Fourteenth Amendment to the United States Constitution, which provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV. However, where an action is brought under 42 U.S.C. § 1983 based upon a deprivation of property, as alleged by Plaintiff, such action can be predicated upon the Due Process Clause only where the asserted property interest is a constitutionally protected right. *See R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 434-35 (6th Cir. 2005).

To maintain an action under § 1983 based on an alleged violation of procedural due process, Plaintiff must show that: (1) his property interest at stake is a protected property right under the Fourteenth Amendment, (2) the deprivation of the interest contravened notions of due process, and (3) state or administrative processes and remedies to redress the alleged violation are inadequate. *See Jefferson v. Jefferson County Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004); *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). Although the analysis lends itself to a three-pronged approach, the threshold issue is always whether the asserted property interest is a constitutionally protected right. *See R.S.W.W., Inc.*, 397 F.3d at 434-35. If no property right exists, the claim must fail.

In order to survive summary judgment, Plaintiff must point to evidence that he had a property interest in his employment protected by the Fourteenth Amendment. *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538 (1985). The Supreme Court in *Board of Regents v. Roth* characterized such property interests as a "legitimate claim of entitlement" to the employment, rather than an abstract need or desire for it or a unilateral expectation of it. 408 U.S. 564, 577 (1972). Whether Plaintiff has a legitimate expectation of continued

10

employment is determined by state law. *Id.* (property interests in employment are "created and ... defined by existing rules or understandings that stem from an independent source such as state law") *Bailey v. Floyd Co. Bd. of Educ.,* 106 F.3d 135, 141 (6th Cir. 1977). Therefore, in order to establish a protected interest in his position as a Campbell County police officer, Plaintiff "must be able to point to some statutory or contractual right conferred by the state which supports a legitimate claim to continued employment." *Id.*

Plaintiff has failed to do so here. Simply put, Plaintiff did not possess any constitutionally protected property interest in continued employment with CCPD. In fact, Plaintiff has offered no evidence that he was anything but an at-will employee, which is insufficient under Kentucky law to establish a recognized constitutionally protected property interest in his job as a police officer. *Id.* (finding that Kentucky law requires that a person be more than an at-will employee in order to have a property interest in his job).

Plaintiff has also alleged an unconstitutional deprivation of a liberty interest in his reputation and good name, which has been recognized by the Sixth Circuit as worthy of protection under the Fourteenth Amendment due process clause. *See Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) ("[A] person's reputation, good name, honor, and integrity are among the liberty interests protected by the due process clause of the fourteenth amendment.") The deprivation of any of those interests "must be accompanied by notice and an opportunity to be heard to refute any charges against that person." *Id.* However, although the cause of action has been recognized within the Sixth Circuit, the following elements must be satisfied:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment.... Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or

11

> inadequate performance, incompetence, neglect of duty or malfeasance....
> Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Brown v. City of Niota*, 214 F.3d 718, 722-23 (6th Cir. 2000) citing *Ludwig v. Board. of Trustees of Ferris State Univ.*, 123 F.3d 404, 410 (6th Cir. 1997). In this case, Plaintiff has made no attempt to satisfy any of these elements.

Nor has Plaintiff established that his inability to secure another law enforcement position constitutes a deprivation of a protected liberty interest. To establish a violation of a protected liberty interest, a plaintiff must show more than injury to his reputation; he must allege the "loss of a governmental right, benefit or entitlement" without due process of law. *Jackson v. Heh*, 215 F.3d 1326, *6 (6th Cir. 2000) (Table decision, text available on Westlaw) citing *Mertik v. Blalock*, 983 F.2d 1353, 1363 (6th Cir. 1993). Although infringement of a plaintiff's state-sanctioned right to pursue a particular activity may rise to the level of a constitutional deprivation, the loss of one job and certain future opportunities does not constitute deprivation of a protected liberty interest. *Jackson*, 215 F.3d at *6; *see, e.g., Pendleton v. City of Haverhill*, 156 F.3d 57, 63 (1st Cir. 1998) (finding no deprivation of a protected liberty interest where the plaintiff worked for a non-governmental employer and lost a private, rather than public, position); *Aversa v. United States*, 99 F.3d 1200, 1216 (1st Cir. 1996) (stating that where a third party "refuses to hire the plaintiff solely as a result of the defendant's defamation, the plaintiff has not described a viable constitutional claim"). In fact, it is only where the defendant's action effectively precludes the plaintiff from practicing his trade with all employers or customers that the plaintiff's liberty interest in pursuing his occupation is infringed. *Jackson*, 215 F.3d at *6.

In this case, Plaintiff testified that Captain Pat Moore from the Newport Police Department obtained his personnel file from CCPD, and he was not hired. (Plf's depo, pp.17-23). Plaintiff also testified that Lieutenant Straman instructed Frank Monterosso of the Park Hills Police Department not to hire him because he was "insubordinate, a troublemaker." (Plf's depo, p.28). Based upon the authorities above, this evidence is insufficient to establish deprivation of a protected liberty interest.

For all of these reasons, Defendants' motion for summary judgment as to Count Two of Plaintiff's complaint is **granted**.[5]

### 3. Claims Against Defendants Pendery, Verst, Otto, and Rechtin.

Several members of the Campbell County Fiscal Court have been sued in their official and individual capacities. However, Plaintiff has alleged no personal involvement on their part, with the exception of perhaps having general statutory oversight authority over the Campbell County Police Department. Because § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a supervisor to incur personal liability." *Miller v. Calhoun County*, 408 F.3d 803, 817 n.3 (6th Cir. 2005). Plaintiff has failed to allege any personal involvement on behalf of Defendants Pendery, Verst, Otto, and Rechtin. Therefore, Plaintiff's claims against them do not survive summary judgment.[6]

---

[5] In view of the Court's granting of summary judgment on Count Two of Plaintiff's complaint, there is no necessity for further inquiries concerning qualified immunity.

[6] Plaintiff's claims against these Defendants in their official capacities are treated as claims against the County itself. *See City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (In a § 1983 action, claims against officers and government officials in their official capacities are equivalent to a suit against the government itself).

### 4. Claims Against Defendant Campbell County and Campbell County Fiscal Court

A state or municipality (or in this case, a county) may only be held liable under § 1983 for the actions of its agents if the agents who injured the plaintiff were acting pursuant to an official policy or custom at the time they committed the harmful acts. *See Monell v. Department of Social Servs.*, 436 U.S. 658, 694 (1978) (holding that state and municipal governments may not be held vicariously liable under § 1983 for harm caused by agents acting under color, but not authority, of state or local law).

In this case, because Plaintiff has failed even to allege that his rights were violated pursuant to an official county policy or custom, he has failed to state a claim against the County or Fiscal Court upon which relief could be granted under § 1983. Therefore, there is no *Monell* liability in this case.

### C. State Claims

Defendants have also moved for summary judgment on Plaintiff's state law constructive discharge (Count Three) and intentional infliction of emotional distress (IIED) (Count Four) claims. Although Defendants have moved for summary judgment on "all issues and claims as to all Defendants," within their motion they have failed to provide any analysis of Plaintiff's claim in Count Five of his Complaint for negligent supervision. Thus, the propriety of Plaintiff's negligent supervision count has not been addressed within this Memorandum Opinion and Order.

### 1. Constructive Discharge Claim

In Kentucky, the commonly accepted standard for constructive discharge is whether, based upon objective criteria, the conditions created by the employer's action are so

intolerable that a reasonable person would feel compelled to resign." *Northeast Health Management, Inc. v. Cotton,* 56 S.W.3d 440, 445 (Ky.App. 2001) (internal quotation marks omitted); *Brooks v. Lexington-Fayette Urban County Housing Authority,* 132 S.W.3d 790, 807 (Ky. 2004), *see also Held v. Gulf Oil Co.,* 684 F.2d 427, 432 (6th Cir.1982) (a finding of constructive discharge in this circuit requires an inquiry into both the objective feelings of an employee, and the intent of the employer. A constructive discharge exists if "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign.") Constructive discharge presents a question of fact that, in jury trials, should be decided by the jury and not the trial court. *Brooks,* 132 S.W.3d at 807.

Additionally, when examining a constructive discharge claim, courts should consider the following non-exclusive list of factors, alone or in combination: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status. *Logan v. Denny's, Inc.,* 259 F.3d 558, 569 (6th Cir. 2001).

In this case, and as summarized in the factual background section herein, Defendants argue that there were multiple performance related reasons for the discipline imposed upon Plaintiff. More particularly, Defendants argue that Plaintiff's constructive discharge claim must be denied because any harassment he allegedly experienced was "more ... a state of mind and perception rather than reality." In response, Plaintiff claims

that the harassment he experienced was pervasive enough to create an intolerable working environment, and identifies several instances which he contends made his working conditions so intolerable that he was forced to resign on October 29, 2003, and thus, he was constructively discharged.

Based upon the record herein, the Court concludes that viewing the evidence and drawing all reasonable inferences therefrom in the light most favorable to Plaintiff, summary judgment on Plaintiff's state law constructive discharge claim must be denied. Although there is certainly ample evidence from which a jury could conclude that Plaintiff's job performance warranted discipline and termination, there is also evidence that the instances referenced by Plaintiff created conditions by which were so intolerable that a reasonable person would have felt compelled to resign, a classic he said, she said analogy. Under these circumstances, summary judgment on Count Three is **denied**.

### 2.    Intentional Infliction of Emotional Distress Claim

In Count Four, Plaintiff asserts a claim for intentional infliction of emotional distress. In their motion for summary judgment, Defendants first argue that Plaintiff's IIED claim is merely a "gap filler" and should be dismissed. Defendants further contend that "[t]he conduct in this case does not even remotely approach that level of conduct required to sustain an [IIED] c[laim] ... under Kentucky law," and Plaintiff has not suffered any injury as a result.

It is well settled that a claim for IIED consists of "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress . . . ." *Craft v. Rice*, 671 S.W.2d 247, 251 (Ky. 1984). The definition of extreme or outrageous conduct is conduct that constitutes a

16

"deviation from all reasonable bounds of decency and is utterly intolerable in a civilized community." *Id.* at 250.

Although Plaintiff fails in his response to specifically identify what conduct should be deemed outrageous, it is nevertheless for this Court to determine whether Defendants' conduct "may reasonably be regarded as so extreme and outrageous as to permit recovery." *Wilson v. Lowe's Home Ctr.*, 75 S.W.3d 229, 238 (Ky. Ct. App. 2001) (citing Restatement (Second) of Torts § 46) ("It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury . . . to determine whether . . . the conduct as been sufficiently extreme and outrageous to result in liability.")

Regardless, because Plaintiff's recovery for alleged emotional distress is already subsumed by a number of Plaintiffs' other claims which have survived summary judgment, namely the USERRA and state law constructive discharge claims, a separate claim for IIED based on that same conduct is not cognizable. *See Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 298-99 (Ky. 1993); *Wilson*, 75 S.W.3d at 238-39; *Messick v. Toyota Motor Mfg.*, 45 F. Supp. 2d 578, 582 (E.D. Ky. 1999).

Accordingly, because Plaintiff's IIED claim is subsumed by alternative claims, Defendants prevail as a matter of law and summary judgment on Count Four of Plaintiff's Complaint is warranted.

### IV.   Conclusion

Wherefore, for the reasons stated herein,

**IT IS ORDERED as follows:**

1. Defendants' Motion for Summary Judgment (Doc. # 31) be, and hereby is, **granted in part** as to Counts Two and Four of Plaintiff's Complaint, and **denied in part** as to Counts One and Three of Plaintiff's Complaint;

2. Counts Two and Four of Plaintiff's Complaint be, and hereby are, **dismissed with prejudice**;

3. This matter is set for a Status Conference on **March 22, 2007 at 9:30 a.m. in Covington**, at which time the Court will schedule this matter for final pretrial conference and trial.

This 15th day of March, 2007.

Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-04-224-Opinion&Order.wpd